UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRAD BRINSON,

        Plaintiff,

    v.

STATE OF CALIFORNIA, et al.,

        Defendants.

Case No. 25-cv-02381-DMR

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 5

Plaintiff Brad Brinson brings this case against Defendants State of California, California Highway Patrol ("CHP"), Officer P. Santiago, Bay Area Phlebotomy and Laboratory Services ("BAPLS"), and Joshua Hammack. [Docket No. 1-2, Ex. B (First Amended Complaint, "FAC").] BAPLS and Hammack ("Lab Defendants") now move to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). [Docket Nos. 5 (Mot.); 20 (Reply).] Brinson opposes. [Docket No. 18 (Opp'n).]

This matter is suitable for determination without oral argument. Civ. L.R. 7-1(b). For the reasons stated below, the court grants Lab Defendants' motion to dismiss.

**I.   BACKGROUND**

Brinson makes the following allegations in the FAC, all of which are taken as true for purposes of this motion to dismiss.[1] On August 28, 2019, CHP Officer Santiago arrested Brinson for driving under the influence. FAC ¶ 8. At the CHP station in San Francisco, Santiago attempted to administer a breathalyzer test. *Id.* ¶ 9. However, Brinson had recently caught a severe chest cold and found it very difficult to blow into the breathalyzer. *Id.* Santiago then told

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

Brinson that he would have to do a blood test instead. *Id.* ¶ 10.

Hammack is a phlebotomist employed by BAPLS who administered the blood test on Brinson. *Id.* ¶¶ 10, 20. Before his blood was drawn, Brinson was presented with a consent form which warned him that if he was taking an anticoagulant, he should not allow his blood to be drawn. *Id.* ¶ 11. Brinson was taking an anticoagulant for his heart condition. *Id.* ¶ 12. Brinson informed Santiago, but Santiago became agitated and threatened to send Brinson to jail and cause him to lose his driver's license for a year if he refused to comply with the blood draw. *Id.* ¶ 13. Santiago did not offer a urine test to Brinson as an alternative. *Id.* ¶ 14. Brinson then asked Hammack if the blood draw was safe for someone taking anticoagulants, and Hammack responded that he was "not a doctor," so he did not know. *Id.* ¶ 16. Brinson ultimately complied with the blood draw, but he spent the night fearful of uncontrolled bleeding and catastrophic medical consequences, and he still has flashbacks to that night and panics whenever he sees a CHP car. *Id.* ¶¶ 17-18.

On December 7, 2023, Brinson filed a complaint in the Superior Court of San Francisco against Defendants. [Docket No. 1 (Removal Notice).] He filed the FAC on August 5, 2024, and served it on BAPLS on February 5, 2025 and on Hammack on February 8, 2025. *Id.* On March 7, 2025, Lab Defendants timely removed the case to federal court. *Id.* They then moved to dismiss on March 14, 2025. Defendants State of California, CHP, and Santiago ("State Defendants") filed an answer to the FAC on May 3, 2025. [Docket No. 28.]

Relevant to this motion, Brinson brings five claims against Lab Defendants: 1) a section 1983 claim brought under the Excessive Force clause of the Fourth Amendment, against all Defendants; 2) a section 1983 claim brought under the Unlawful Search and Seizure clause of the Fourth Amendment, against all Defendants; 3) a state law battery claim brought against Hammack; 4) a state law negligence claim brought against all Defendants; and 5) a state law negligent hiring, supervision, and retention claim brought against BAPLS.

**II.    LEGAL STANDARDS**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

2

1    When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all
2    of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94, and may dismiss a
3    claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual
4    matter to state a facially plausible claim to relief," *Shroyer v. New Cingular Wireless Servs., Inc.*,
5    622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009);
6    *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has
7    facial plausibility when a plaintiff "pleads factual content that allows the court to draw the
8    reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at
9    678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and
10   conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*
11   *Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

12         Under Federal Rule of Civil Procedure 15(a), leave to amend should be granted as a matter
13   of course, at least until the defendant files a responsive pleading. Fed. R. Civ. P. 15(a)(1). After
14   that point, Rule 15(a) provides generally that leave to amend the pleadings before trial should be
15   given "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied
16   with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir.
17   2003) (quotation omitted). However, leave to amend may be denied where the complaint "could
18   not be saved by any amendment," i.e., "where the amendment would be futile." *Thinket Ink Info.*
19   *Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).

20   **III.  DISCUSSION**
21       **A.  Statute of Limitations**
22         Lab Defendants argue that all claims against them are time-barred. Section 1983 borrows
23   the state statute of limitations for personal injury actions, which is two years pursuant to California
24   Code of Civil Procedure section 335.1. *Action Apartment Ass'n, Inc. v. Santa Monica Rent*
25   *Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007) ("It is well-established that claims brought under
26   § 1983 borrow the forum state's statute of limitations for personal injury claims . . . and in
27   California, that limitations period is two years."). Brinson's injury occurred on August 28, 2019,
28   but he did not file a complaint until December 7, 2023, more than four years later.

1    In opposition, Brinson argues that the statute of limitations was tolled because of Brinson's criminal case arising from the DUI arrest. Opp'n 2. California Government Code section 945.3 tolls the limitations period while criminal actions are pending against the potential plaintiff, which courts have applied to section 1983 cases. *See Harding v. Galceran*, 889 F.2d 906, 908 (9th Cir. 1989). The FAC briefly mentions that "a criminal case arising from this incident has been pending." FAC ¶ 7. In opposition, Brinson clarifies that his criminal matter was dismissed on December 30, 2021, within two years of the date he filed his complaint. Opp'n 2.

The court cannot consider facts raised for the first time in opposition to determine the propriety of a Rule 12(b)(6) dismissal, but can consider them to determine whether to grant leave to amend. *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003). The FAC contains only a conclusory statement that the statute of limitations was tolled, which is insufficient to survive a motion to dismiss. However, based on Brinson's statement in his opposition brief, he may well be able to amend his complaint to allege facts to support tolling. As such, the court grants Lab Defendants' motion to dismiss Brinson's claims, but with leave to amend. In light of this outcome, the court now considers the parties' arguments on the merits of Brinson's claims.

### B.     Section 1983 claims

"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000) (citing *Wyatt v. Cole*, 504 U.S. 158, 161 (1992)). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Nunn v. LeBlanc*, No. C 14-0905 PJH, 2014 WL 1089551, at *3 (N.D. Cal. Mar. 17, 2014) (citing *Graham v. Connor*, 490 U.S. 386, 393–94 (1989)). To state a claim under section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Ketchum v. Alameda Cty.*, 811 F.2d 1243, 1245 (9th Cir. 1987).

Lab Defendants argue that the section 1983 claims against them should be dismissed because they are private parties who were not acting under color of state law. Mot. 4-6. Brinson

4

responds that Lab Defendants were operating as agents of the state in the process of collecting evidence for a criminal prosecution, and that they acted under the direction of Santiago and CHP. Opp'n 3.

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *McDade*, 223 F.3d at 1139–40 (quoting *Atkins*, 487 U.S. at 48). "The determination of whether a nominally private person or corporation acts under color of state law 'is a matter of normative judgment, and the criteria lack rigid simplicity.'" *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295–96 (2001)). The Ninth Circuit has recognized four general tests that may aid the court in identifying state action: "(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Id.* (quoting *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003)).

The court finds that the FAC pleads facts to support that Lab Defendants acted under color of state law. Hammack performed the blood draw under the direction of Santiago so that Santiago could collect evidence of Brinson's alleged drunk driving. Lab Defendants concede that the services of phlebotomists like Hammack are necessary for the state to perform its function of investigating blood alcohol content. Reply 4 (citing Cal. Vehicle Code § 23158). Under these circumstances, the state has "so far insinuated into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Rawson,* 975 F.3d at 748 (quoting *Jensen v. Lane Cnty.*, 222 F.3d 570, 575 (9th Cir. 2000)). Lab Defendants attempt to argue that Hammack was not acting jointly with the state because Hammack had an independent "healthcare provider-patient relationship" with Brinson. Reply 3. The fact that a medical professional may have exercised their independent medical judgment at some point does not insulate them from a finding of state action. *See Rawson,* 975 F.3d at 750. The court may reasonably infer from the pleadings that Hammack acted jointly with the state in drawing Brinson's blood. Lab Defendants make no other arguments on the merits of Brinson's section 1983 claims as to Hammack.

As to BAPLS, Lab Defendants cite *Tsao v. Desert Palace, Inc.,* which held that to state a

5

1    section 1983 claim against a private entity (as opposed to a private individual), a plaintiff must

2    plead that an "official policy, custom, or pattern" on the part of a private entity was "the actionable

3    cause of the claimed injury." *Tsao v. Desert Palace, Inc.,* 698 F.3d 1128, 1143 (9th Cir. 2012)

4    (citing *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008)).  Brinson makes only

5    a conclusory allegation that BAPLS "should have provided adequate training and supervision of

6    its employees, such as [Hammack], to prevent this violation of accepted medical practices."  FAC

7    ¶ 20.  There are no allegations regarding BAPLS's policies or how those policies caused Brinson's

8    constitutional injury.  Brinson fails to plead a section 1983 claim against BAPLS.

9       In sum, assuming Brinson can amend his complaint to overcome the statute of limitations

10   issue, Brinson has stated section 1983 claims against Hammack for violations of the Fourth

11   Amendment.  Brinson's section 1983 claims against BAPLS are dismissed with leave to amend.

### C.    Battery

"The essential elements of a cause of action for battery are: (1) defendant touched plaintiff, or caused plaintiff to be touched, with the intent to harm or offend plaintiff; (2) plaintiff did not consent to the touching; (3) plaintiff was harmed or offended by defendant's conduct; and (4) a reasonable person in plaintiff's position would have been offended by the touching." *So v. Shin*, 212 Cal. App. 4th 652, 669 (2013), *as modified on denial of reh'g* (Jan. 28, 2013) (citing CACI No. 1300).  "Consent is a complete defense to a battery claim." *Nelson v. City of Irvine*, 143 F.3d 1196, 1207 (9th Cir. 1998) (citing *Ashcraft v. King*, 228 Cal.App.3d 604 (Ct. App. 1991)).

Lab Defendants do not dispute that Brinson adequately pleads Hammack touched him with the intent to harm or offend him, that Brinson was harmed or offended, and that a reasonable person in Brinson's position would have been offended by the touching.  Instead, they argue that California Vehicle Code section 23612 establishes that Brinson impliedly consented to having his blood drawn because he was arrested for driving under the influence. *See* Cal. Vehicle Code § 23612(a)(1)(A) ("A person who drives a motor vehicle is deemed to have given his or her consent to chemical testing of his or her blood or breath for the purpose of determining the alcoholic content of his or her blood, if lawfully arrested for [driving under the influence]").  This is incorrect.  The statute specifically contemplates that options for chemical testing other than a

United States District Court
Northern District of California

blood draw should be available to the person who is arrested, such as a breath or urine test. *See, e.g.,* § 23612(a)(2)(B) ("the person has the choice of whether the test shall be of his or her blood or breath"); § 23612(a)(2)(C) ("If the person arrested is incapable of completing the blood test, the person shall submit to and complete a urine test."). Although Brinson may have impliedly consented to chemical testing, he did not impliedly consent to a blood draw. *See also Nelson v. City of Irvine*, 143 F.3d 1196, 1207 (9th Cir. 1998) (finding that plaintiffs' battery claims were not defeated by implied consent where plaintiffs alleged they were coerced into a blood draw to determine their blood alcohol level, and were not given the option to take a breath or urine test). Implied consent does not defeat Brinson's battery claim.

The court is unable to analyze Lab Defendants' vague assertion that Brinson failed to plead "the elements of a cause of action." Mot. 9.[2] However, Lab Defendants more specifically attack Brinson's request for punitive damages. *Id.* Courts in this circuit have generally found that "'requests for punitive damages provide no basis for dismissal' under Rule 12(b)(6)." *Apple, Inc. v. Starr Surplus Lines Ins. Co.,* No. 24-cv-03738-RFL, 2024 WL 4834424, at *3 (N.D. Cal. Nov. 18, 2024) (quoting *Muldoon v. DePuy Orthopaedics, Inc.*, No. 15-CV-02723-PJH, 2024 WL 3522204, at *15 (N.D. Cal. July 23, 2024)). The court will not dismiss Brinson's battery claim based on his request for punitive damages. The court finds that, assuming he can successfully plead the timeliness of his claims, Brinson has pleaded a battery claim against Hammack.

### D. Negligence

"To prevail on a cause of action for negligence under California law, a plaintiff must establish: (a) the defendant's legal duty to use due and reasonable care; (b) a breach of such legal duty; and (c) that the breach is the proximate or legal cause of the resulting injury." *Radus Tek Servs., Inc. v. IDC Techs. Inc.,* No. 5:24-CV-04793-PCP, 2025 WL 586587, at *2 (N.D. Cal. Feb.

---

[2] On reply, Lab Defendants argue for the first time that Brinson failed to meet the essential elements of a claim for battery; that Brinson consented to the blood draw because he signed an informed consent document; and that Hammack is immune from liability under California Vehicle Code section 23158(d). Reply 7-8. "The district court need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). As Brinson did not have an opportunity to respond to these arguments, the court declines to consider them.

1   24, 2025) (citing *Ladd v. County of San Mateo*, 12 Cal. 4th 913, 917 (1996)).

2   Lab Defendants argue the FAC fails to allege that they breached a duty of care or that their
3   actions caused Brinson harm. Mot. 9-10. In their reply brief, they add that Lab Defendants would
4   not be liable even if they had breached a duty of care and even if Brinson experienced emotional
5   harm because Brinson did not sustain a physical injury. Reply 8-9.

6   The FAC alleges that the consent form for the blood draw included a warning that
7   someone taking an anticoagulant should not have their blood drawn. FAC ¶ 11. Brinson asked
8   Hammack if the blood draw was safe for his condition, and Hammack stated that he did not know.
9   *Id.* ¶ 16. Nevertheless, Hammack proceeded to conduct the blood draw. The FAC also alleges
10  that an "antidote to reverse the anticoagulant medication . . . is always available under medically
11  accepted practices," but this antidote was not available at the CHP station where Brinson was held.
12  *Id.* ¶ 17. Hammack, "[u]nderstanding [Brinson's] medical condition, and knowing that it was
13  medically unsafe to perform venipuncture . . . should have refused to conduct such a dangerous
14  and unlawful procedure. Instead, [Hammack] stuck [Brinson] with the needle." *Id.* ¶ 21.

15  Although not a model of clarity, Brinson appears to allege that the standard of care for a
16  phlebotomist conducting a blood draw is to not do it at all if the patient is under the effects of an
17  anticoagulant. *See, e.g.,* FAC ¶¶ 11, 17, 21. The allegations are thin, but the court may reasonably
18  infer from the FAC that Hammack allegedly breached his duty of care to Brinson because the
19  consent form indicated that a person with Brinson's medical condition should not have their blood
20  drawn, and Hammack did it anyway.

21  Lab Defendants argue that the FAC does not allege Brinson was injured or harmed by
22  Hammack's actions. To the contrary, the FAC states that Hammack administered a blood draw on
23  Brinson in breach of Hammack's duty of care, and as a result of Hammack's conduct, Brinson
24  suffered a "night fearful of uncontrolled bleeding and catastrophic medical consequences." FAC ¶
25  18. In California, recovery for the "negligent causing of emotional distress" is "generally allowed
26  where there is physical impact." *Hecimovich v. Encinal Sch. Parent Tchr. Org.,* 203 Cal. App. 4th
27  450, 477 (2012); *see also* 6 Witkin, Summary 11th Torts § 1140 (2025). Sticking a needle into
28  Brinson is a "physical impact." Although Brinson does not seek damages associated with the

8

physical intrusion caused by the blood draw, that does not preclude him from seeking recovery for the attendant emotional injury caused by the blood draw.

In reply, Lab Defendants cite various cases regarding professional malpractice to argue that "nominal damages, speculative harm, or threat of future harm" do not create a cause of action for negligence. Reply 8-9 (quoting *Budd v. Nixen*, 6 Cal. 3d 195, 200 (1971)). These cases are off-point. *Budd* is about attorney malpractice, but even if applied here, Brinson is not suing for the speculative harm of uncontrolled bleeding. He seeks a remedy for harms he experienced from an allegedly improper blood draw and the emotional suffering it caused him.

Assuming Brinson can amend his complaint to overcome the statute of limitations issue, the court finds that Brinson has pleaded a claim for negligence against Hammack. In addition, under the doctrine of *respondeat superior*, an employer may be vicariously liable for an employee's tortious acts committed within the scope of the employment. *See Patterson v. Domino's Pizza, LLC,* 60 Cal. 4th 474, 491 (2014). Lab Defendants do not dispute that BAPLS would be vicariously liable if a negligence claim is stated against Hammack.

### E.   Negligent Hiring, Supervision, and Retention

"An employer may be liable to a third person for the employer's negligence in hiring or retaining an employee who is incompetent or unfit." *Phillips v. TLC Plumbing, Inc*., 172 Cal. App. 4th 1133, 1139 (2009) (citing *Roman Catholic Bishop v. Superior Court,* 42 Cal. App. 4th 1556, 1564-1565 (1996)). "Negligence liability will be imposed on an employer if it 'knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes.'" *Id.* (citing *Doe v. Capital Cities,* 50 Cal. App. 4th 1038, 1054 (1996)). "Liability for negligent . . . retention of an employee is one of direct liability for negligence, not vicarious liability." *Id.* at 1139-1140 (citing *Delfino v. Agilent Technologies, Inc.*, 145 Cal. App. 4th 790, 815 (2006)).

Lab Defendants argue that the FAC fails to allege any facts regarding BAPLS's practices in hiring, supervision, and retention of employees. The court agrees. The FAC contains only a conclusory allegation that BAPLS "should have provided adequate training and supervision of its employees, such as [Hammack], to prevent this violation of accepted medical practices." FAC ¶

20. In opposition, Brinson asserts that "only a failure of supervision and training could have allowed Mr. Hammack to conduct such an irresponsible and dangerous procedure knowing that Mr. Brinson was on blood thinning medication." Opp'n 4-5. These allegations are conclusory and speculative; they fail to state a claim for direct negligence against BAPLS.

The court grants Lab Defendants' motion to dismiss the negligent hiring claim against BAPLS with leave to amend.

## IV.  CONCLUSION

The court grants Lab Defendants' motion to dismiss. Brinson is granted leave to amend to 1) plead facts supporting that the statute of limitations was tolled such that his claims are timely filed; 2) amend his section 1983 claims against BAPLS; and 3) amend his negligent hiring claim against BAPLS. Brinson shall file his second amended complaint by **July 7, 2025**.

**IT IS SO ORDERED.**

Dated: June 16, 2025

_____
Donna M. Ryu
Chief Magistrate Judge